La REDDOLA, LESTER & ASSOCIATES, LLP
Attorneys for Plaintiff
600 Old Country Road, Suite 230
Garden City, New York 11530
(516) 745-1951
sml@llalawfirm.com
rjl@llalawfirm.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

JOSEPH OQUENDO,                                      Case No.

                            Plaintiff,

                                                     **COMPLAINT**

            -against-
                                                     **Jury Demanded**

CITY OF NEW YORK , NEW YORK CITY
POLICE DEPARTMENT, former Commissioner
RAYMOND W. KELLY, former Commissioner
WILLIAM J. BRATTON, Commissioner JAMES
P. O'NEILL, Legal Bureau Director JONATHAN
DAVID, Former Investigator THOMAS
SCOLLAN, and "JOHN DOES #1-3" and "JANE
DOES #1-3," said names being fictitious, but
intended to designate certain unknown employees
of the City of New York Police Department.


                            Defendants.
-------------------------------------------------------------------X

       Plaintiff Joseph Oquendo, by his attorneys, La Reddola, Lester & Associates, LLP, for

his Complaint against the Defendants, alleges:

### Nature of the Action

       1.      This claim is a civil rights action for a declaratory judgment, monetary damages,

and injunctive relief.  Plaintiff JOSEPH OQUENDO is a retired, highly decorated NYCPD

detective who, after denial of his Certificate of Service and Pistol License Inquiry form (PD 643-

155), known colloquially as a "good guy letter" brought a Civ. Pro. Law and Rules Article 78

Proceeding entitled *Oquendo v. City of New York*; Index No. 100529/2015 (Supreme Court New

York County) which resulted in a December 12, 2016, Order by Hon. Lucy Billings requiring the New York City Police Department to issue Plaintiff an unrestricted handgun carry license. Upon filing his application the NYCPD denied the pistol license application in disregard of the Court Order. Then upon administrative appeal, the NYCPD offered Plaintiff a "business carry" pistol license, a purpose that is not justifiable. The "business carry" pistol license under NY Penal Code §400.00(2)(f) has as a prerequisite (1) a finding that the applicant has demonstrated "proper cause" and (2) satisfies the requirement of the "Instructions to Handgun License Applicants" for a business. Here, the Plaintiff has met the first prerequisite, but does not justify the second. [1]

2.      The NYCPD cannot both comply with the Court Order, find Plaintiff meets the Proper Cause requirements of NY Penal Code §400.00(2)(f) and not grant the application, or instead foist upon him a business license for which he cannot possibly qualify.

3.      The unbridled discretion afforded the NYCPD in the issuance of unjustifiable pistol licenses has led to a culture of corruption fostered by years of bribes, favors and the routine granting of unrestricted carry licenses to the wealthy and connected, even to those with histories of domestic abuse and prior felony arrests. [2]  Review by this Court of the

---

[1] See  "Instructions to Handgun License Applicants",
http://www.nyc.gov/html/nypd/downloads/pdf/permits/HandGunLicenseApplicationFormsComplete.pdf ; 8. Proof of Business Ownership. If you are making application for a License in connection with a business, you must submit proof of ownership for that business. Such proof must clearly state the names of the owner(s), or, if a corporation, the names of the corporate officers. A corporation must submit its corporate book including fi ling receipt, certificate of incorporation and minutes of the corporate meeting reflecting current corporate officers; others must provide their business certificate or partnership agreement, whichever is applicable. If the business requires a license or permit from any government agency, e.g. alcohol or firearms sales, gunsmith, private investigation and guard agencies, you must submit the license or permit or a certified copy thereof. You must submit proof of address for the business. Proof may consist of a utility bill, not more than 60 days old, in the name of the business or a lease in the name of the business. 9. Letter of Necessity. All applicants for a carry license and those seeking a premise license for use in connection with their employment MUST complete the Letter of Necessity found on page 3 of the application. NO SUBSTITUTES WILL BE ACCEPTED.

[2] " Former Police Officers, Ex Brooklyn Assistant DA   Arrested in Gun License Bribery Scandal"   April 25, 2017
https://newyork.cbslocal.com/2017/04/25/nypd-gun-license-bribery-scheme-case/ .

unconstitutional practices which ordinary citizens suffer under compared to the rest of New York State [3] is now required.

4.      Plaintiff seeks monetary damages for the violation by Defendants of his Federal and State Constitutional Rights including the Second and Fourteenth Amendment and under 42 U.S.C. § 1983.

5.      The *Monell* claim pled herein is based upon the Defendants' deliberate, corrupt, intentional, retaliatory and unconstitutional policy to disregard Penal Law §400.00 and despite a purported finding of proper cause, foist upon Plaintiff a locally based pistol license category for which he is in no way eligible.

6.      By failing to have a predictable, consistent, objective and definite standard for "proper cause," and by incorrectly treating the Second Amendment as a privilege rather than a right, the Defendants have fostered a system that masks corruption with irregular and unpredictable results.

### Jurisdiction and Venue

7.      This Court has jurisdiction of this action under 28 U.S.C. §1331. This action arises under the Constitution and laws of the United States and under 28 U.S.C. §1343 in that this action seeks to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs and usages of the State of New York, of rights, privileges or immunities guaranteed to the Plaintiff under the Second and Fourteenth Amendments of the United States Constitution.

---

[3] The "business carry license" granted by the New York City Police Department is simply a local creation such that the same "business carry license" is an ordinary concealed carry license as issued by the rest of New York State under Penal Law § 400.00(2)(f). Adding the restriction of a "business carry license" is not linked in any way to a protection of the public safety.

8.      This action seeks relief pursuant to 42 U.S.C. §§1983 and 1988.

9.      Pursuant to New York General Municipal Law §§50-e and 50-1, Plaintiff filed a Notice of Claim and more than 90 days have elapsed since the service of the Notice of Claim upon the Defendants and compliance, adjustment or payment thereof has been neglected or refused.

10.     Venue in this judicial district is proper under 28 U.S.C. §1391(b), since all of the events and omissions giving rise to the Plaintiff's claims arose in the City of New York and in this judicial district.  Moreover, upon information and belief, all parties currently reside or maintain offices in Queens County.

### Parties

11.     Plaintiff JOSEPH OQUENDO is a citizen of the State of New York and a resident of Queens County, residing at 144-46 227th Street, Laurelton, New York 11413.

12.     Plaintiff was a member of the NYCPD since 1984 and has made over 1700 arrests during his career. The majority of those requests were while he was in the Narcotics Division.

13.     Upon information and belief, Defendant CITY OF NEW YORK (the "CITY") is a duly constituted municipal corporation of the State of New York, existing and operating under and by virtue of the laws of the State of New York.

14.     Upon information and belief, Defendant New York City Police Department (the "NYCPD") is an administrative arm of the CITY with offices located at 1 Police Plaza, New York, NY 10007.

15.     Upon information and belief, Defendant RAYMOND W. KELLY  ("KELLY") was at all relevant times a former Commissioner of the Police Department of the City of New

York with an office located at 1 Police Plaza, New York, NY 10007. Upon further information and belief, KELLY has retired from the Police Department.

16. Upon information and belief, Defendant WILLIAM J. BRATTON ("BRATTON") was at all relevant times a former Commissioner of the Police Department with an office located at 1 Police Plaza, New York, NY 10007. Upon further information and belief, BRATTON has retired from the Police Department.

17. Upon information and belief, Defendant JAMES P. O'NEILL ("O'NEILL") is currently the Commissioner of the Police Department with an office located at 1 Police Plaza, New York, NY 10007.

18. Upon information and belief, Defendant JONATHAN DAVID ("DAVID") is currently the Director of the NYCPD Legal Bureau with an office located at 1 Police Plaza, New York, NY 10007.

19. Upon information and belief, Defendant THOMAS SCOLLAN was at all relevant times the former Inspector for NYCPD Internal Affairs Bureau, with an office located at 315 Hudson Street, New York NY 10013.

20. Upon information and belief, Defendants "JOHN DOES #1-3" and "JANE DOES #1-3," are fictitious names intended to designate certain unknown employees of the CITY in the Police Department's Pistol License Section and Internal Affairs Bureau.

21. All Defendants herein are being sued in both their official and individual capacities.

**Factual Background**

**False Arrest of Plaintiff and Acquittal**

22.    On May 1, 2011 at approximately 6:00 a.m. Plaintiff JOSEPH OQUENDO was arrested and charged with the criminal offense of Driving While Intoxicated ("DWI"), while operating his personal vehicle in or around 56th Street and 2nd Avenue in Brooklyn, New York.

23.    On April 9, 2013, Plaintiff was acquitted of the criminal charges pending in Kings County Criminal Court after a full trial in the matter of *People v. Oquendo* (Docket No. 2011KN034142).

24.    Even after Plaintiff was acquitted in the criminal matter Defendants brought and maintained administrative charges against Plaintiff long after the criminal matter had been resolved in Plaintiffs favor.

**Return to Work at NYCPD, and Return of Firearms**

25.    On March 18, 2014, eleven months after Plaintiff's acquittal of the criminal charges, Plaintiff's firearms and credentials were returned to him by the NYCPD while still employed by the NYCPD.

26.    On April 1, 2014, Plaintiff put in for his retirement after being transferred out of the Narcotics Division, where he was the commanding Detective, First Grade.

27.    By the end of 2014, Plaintiff filed all paperwork required to effectuate retirement and receive his Retired Member of Service Pistol license.

28.    During his employment, like all law enforcement officers in New York State, Plaintiff did not require a Penal Law § 400.00(2)(f) unrestricted pistol carry license.

29.    Rather, Plaintiff owned and possessed handguns both personal and for his employment "on the badge," as described above.

6

30.     During the retirement process, law enforcement officers are required: to (1) surrender their active NYC Police badge, (2) obtain a retirement ID card, and (3) convert their "on the badge" permission to a Penal Law §400.00(2)(f) carry license.

31.     Unlike the typical applicant, the retiree conversion from "on the badge" to an unrestricted carry license does not require the typical six-month background check, finger printing and reference letters that most NYS residents are required to provide. [4]

32.     To complete this conversion to a proper cause license, all the Police Retiree needs to file his retirement paperwork including the Certificate of Service and Pistol License Inquiry form (PD 643-155), known colloquially as a "good guy letter."

33.     Upon information and belief, the process often is completed in a single day.

34.     Plaintiff's retirement date was set for October 20, 2014.

35.     On October 10, 2014, Plaintiff received his Retirement Identification Card, stamped with the words "No Firearms".

36.     Plaintiff had his pistol license retuned to him for work purposes since acquittal in March 18, 2014.

37.     In other words up to the date of retirement, Plaintiff had no reason to believe he would not follow the normal course and receive a Penal Law § 400.00 Proper Cause license, allowing him full concealed carry in New York State.

38.     As he would later find out, the "No Firearms" stamp was the result of an open Internal Affairs investigation related to the very DWI arrest for which he was acquitted

39.     Defendants refuse to review, address or close the Internal Affairs investigation for

---

[4] All NYS pistol licensees granted under Penal Law § 400.00(2)(f) are carry licenses.  NYC, Nassau County, Suffolk County and Westchester County apply additional restrictions under the authority granted to them by the Courts. These restrictions are administrative only and are not recognized by the rest of NYS where such licenses are considered unrestricted, or by the Penal Law.

Plaintiff after retirement, creating for Plaintiff a permanent basis for denial of his Penal Law §400.00(2)(f) carry license without means of review.

***Oquendo v. City of New York*; Index No. 100529/2015 (Supreme Court New York County)**

40.     On August 20, 2015, Plaintiff filed a Notice of Petition and Petition under Article 78, mandating the City and the NYCPD provide the necessary "good guy" letter (PD 643-155) or issue an unrestricted proper cause pistol license.

41.     On December 12, 2016, the Hon. Lucy Billings Supreme Court Justice issued an order, granting the Respondents motion dismiss the Article 78 for the issuance of a "good guy letter" and simultaneously ordering the Respondents to ignore the requirement of a "good guy letter" and issue a full carry license to Oquendo holding:

> While the Police License Inquiry Response Form might ease the [pistol license] application process, neither he nor respondents have pointed to any bar, the unresolved disciplinary charges or otherwise, to a successful application. They [the "good-guy" letters] are not embodied in any regulation or statute and do not supersede the application process available to petitioner pursuant to Penal Law § 400.00. Moreover, respondents emphatically agree with petitioner that he is <u>not</u> ineligible to obtain a license due to his lack of a Pistol License Inquiry Response Form or due to the stamp on his retiree identification card, a position to which he may hold respondents if and when he applies.

42.     In other words, respondents must grant Plaintiff a Penal Law §400.00(2)(f) fully carry pistol license, as it is not required for the issuance of a concealed carry license for non-police retirees.

**NYCPD Admits OQUENDO Satisfies "Proper Cause" Requirement But Offers A Business Carry License Without Justification[5] and For Which He Is Ineligible**

43.     In 2017, Plaintiff applied for a Penal Law §400.00(2)(f) unrestricted carry license,

---

[5] "Proper cause" is not defined by the Penal Law, but New York State courts have defined the term to include carrying a handgun for target practice, hunting, or self-defense. When an applicant demonstrates proper cause to carry a handgun for target practice or hunting, the licensing officer may restrict a carry license "to the purposes that justified the issuance". See <u>Kachalsky v. Westchester</u>, 701 F.3d 81 2nd Cir. (2012) at 86.

as per Justice Billings Order.

44.     The purpose of the license, the Court Order and the second application were all for self-defense.

45.     On or around December 7, 2017, the NYCPD rejected Plaintiff's license application stating, "you have failed to submit this required document [good guy letter] therefore your application to be granted an "Unrestricted Carry License has been disapproved."

46.      The Notice of Disapproval letter claims Plaintiff is unable to be granted his unrestricted carry license without a good-guy letter, in contradiction of the clear language of Justice Billings' Order.

47.     As per Judge Billings Order, A good guy letter is not required under Penal Law § 400.00(2)(f) for a concealed carry license as issued throughout New York State except for New York City.

48.     The vast majority of Penal Law § 400.00(2)(f) pistol licenses issued throughout the State of New York are issued to ordinary citizens not law enforcement licensees requiring a "good guy letter".

49.     On administrative appeal, in July 18, 2018, Respondents withdrew their requiring for a "good guy letter" and offered Plaintiff instead a "business" carry license, as if he was never a Police Detective.

50.     Respondent's thus admit Plaintiff meets the requirements of Penal Law Section § 400.00(2)(f) including demonstrating "proper cause" by agreeing to issue a derivative business carry license.

51.     This substitution of NYCPD license offered is not justifiable under the application.

52.     The purpose of the license application is clearly self-defense.

53.     Plaintiff's basis for a finding of "proper cause" is and can only be self-defense making the substitution to business irrational and unjustifiable.

54.     Upon information and belief, celebrities and others granted unrestricted carry licenses in New York City under the NYCPD proper cause standard are not subject to such a substitution.

55.     Plaintiff does not own any business and is not eligible for such a license and may be subject to revocation in the future.

56.     A "business carry" limited license is not an acceptable substitute for an unrestricted carry license where the applicant does not own or operate any business.

57.     Defendants deliberately ignored their own rules by applying their "discretion" by offering a local category of the NYS Penal Law §400.00(2)(f) full carry license, but with a "business restriction".

58.     By again bending their own rules, Defendants aimed at deception as the license offered does not comport to the requirements of the Court's Order.

59.     By again bending their own rules, Defendants aimed to further disgrace Plaintiff, by appearing to comply with the Court order but refusing to issue a carry license without restriction which would allow Plaintiff same protections as other most New Yorkers outside of NYC, Nassau County, Suffolk County and Westchester and as enjoyed by most NYCPD retired officers. [6]

---

[6] Recently, in *New York State Rifle & Pistol Association Inc. v. City of New York*, the CITY attempted to avoid an adverse ruling by temporarily altering the rule and policy in question, as it did here by offering the license with business restriction. This was unsuccessful, as the Supreme Court of the U.S. decided to move forward with oral argument, but it demonstrates the CITY's mode of operation in its assault against the Second Amendment rights of NYC residents.

60.     This is an extension of the original denial of a "good guy letter"; Defendants denied the good guy letter and retired officer license as a means to mar the reputation and prestige of Plaintiff as a retired law enforcement officer.

61.     This "offer" was deliberate and was meant to be insulting and unjustifiable.

62.     This "offer" could have been revoked as Plaintiff was not eligible for such a license.

63.     For these reasons, Plaintiff denied the "offer" of the illegal, unconstitutional, unsustainable, unjustifiable and improper business license.

64.     As a retiree, there is no way for him to address the allegedly open internal investigations used to justify the non issuance of a good guy letter.

**New York's Pistol License Regime As Applied By Defendants**

65.     NY Penal Code §400.00(1) states that "No license shall be issued or renewed except for an applicant… (n) concerning whom no good cause exists for the denial of the license."

66.     NY Penal Code §400.00(2) states that "A license for a pistol or revolver, other than an assault weapon or a disguised gun, shall be issued to… (f) have and carry concealed, without regard to employment or place of possession, by any person when proper cause exists for the issuance thereof…."

67.     As stated above, the Defendants failed to find either "no good cause for the issuance of," or lack of "proper cause" in denying Plaintiff's Penal Law §400.00(2)(f) application.

68.     In New York State, where Judges are often the licensing official, the "proper cause" of self-defense is regularly found when granting pistol applications demonstrating a

11

special need for self-protection distinguishable from the general community or additional local restrictions added by the issuing agent justified by the application. (See NYS Police website: https://www.ny.gov/services/apply-firearms-license ) [7]

69.    In New York City, the "proper cause" standard is interpreted by the police and supported by established by case law as "a special need for self-protection distinguishable from that of the general community or of persons engaged in the same profession." *Klenosky v. N.Y.C. Police Dep't,* 428 N.Y.S.2d 256, 257 (N.Y. App. Div. 1980)).

70.    In New York City however, "proper cause" is rarely found to exist, and only granted for an undefined "special need".

71.    Without a clearly defined standard, there is no way to distinguish "special need" from the history of bribery and corruption which has existed for some period of time.

72.    Upon information and belief, proper cause determinations included taking orders from former Deputy Inspector Mike Endall and Police Commissioner BRATTON. See https://www.nydailynews.com/new-york/ny-metro-nypd-license-division-dirt-20190123-story.html.

73.    According to various news sources, upon information and belief, clients of the expediters included President Donald J. Trump, Donald Trump Jr., Michael Cohen, donors and fundraisers of Mayor Bill de Blasio, CEO of Gristedes Foods, John Catsimatidis, former Sony CEO Thomas Mottola, former Morgan Stanly CEO John Mack, Ronald Lauder (of Estee

---

[7] A firearms license is a state license however it is issued under the authority of county licensing officers. An applicant must decide what type of license will be sought.
The most common types of firearm licenses are:
- Carry concealed
- Possess on Premises
- Possess/Carry During Employment

(See NYS Police website: https://www.ny.gov/services/apply-firearms-license )

Lauder), former Fox News CEO Roger Ailes, Sean Hannity, and actor Tracy Morgan (despite his prior felony conviction).

See https://www.nydailynews.com/new-york/ny-metro-nypd-license-division-dirt-20190123-story.html.

74.     The NYCPD policy is such that a highly decorated police Detective such as Plaintiff at risk from those he arrested by living in the City where he worked undercover for decades, cannot satisfy "special need" based upon self-defense, but celebrities such as Howard Stern or John Catsimatidis, former Sony CEO Thomas Mottola, former Morgan Stanly CEO John Mack, Ronald Lauder (of Estee Lauder), former Fox News CEO Roger Ailes, Sean Hannity, and actor Tracy Morgan (despite his prior felony conviction) can demonstrate special need.

75.     Or Plaintiff could simply move upstate and obtain an unrestricted carry license.

76.     The NYCPD policy is standardless, in that it lacks narrow, objective, and definite standards, but instead allows licensing officials unbridled discretion in the appraisal of facts, the exercise of judgment and the formation of opinion, which has been skewed by bribes.

77.     It is foreseeable and predictable that illegal activity, in the form of corruption and deprivation of constitutional rights, will occur in an atmosphere treats a carry pistol license issued regularly in New York State as a privilege.

78.     In New York City, the right to possess a handgun has required bribery or special connections or both.

**The NYCPD Pistol License Scheme is Unlawful Under Penal Code §400.00**

79.     The issuance of a Pistol License in New York State is governed by Penal Law Penal Law §400.00 *et seq*.

13

80.     The CITY's pistol license "scheme" is in direct contradiction to that which is outlined in §400.00 *et seq*.

81.     The Defendants have created a policy ("the Policy") aimed to reduce the overall firearm ownership of NYC citizens, and instead of protecting those who satisfy "proper cause" allow additional restrictions to be added such that only connected, rich, and famous individuals in NYC may obtain an unrestricted carry licenses.

82.     This unconstitutional Policy is effectuated by *inter alia* at least **(6) six actions**:

   a.   Having a standard for unrestricted "special need" which is indiscernible from randomness;

   b.   Allowing local sub categories of the concealed carry license issued in New York State not set forth in the Penal Law;

   c.   Requiring a "good guy" letter for concealed carry for police retirees; where the process of obtaining same may be manipulated;

   d.   Treating the ownership and possession of a firearm as a privilege rather than an individual right;

   e.   Denying the typical unrestricted Penal Law §400.00(2)(f) license even in cases where "proper cause" has been demonstrated;

   f.   Granting §400.00(2)(f) licenses to felons based on unknown and unpredictable "special need" which is indiscernible from the product of bribery.

83.     This Policy is intended to restrict the Second and Fourteenth Amendment rights of New York City residents and Police Retirees rather than to effectuate Penal Law § 400 as intended.

84.     This Policy has the effect of "overvaluing" a concealed carry license in New York

City.

85.     The "proper cause" standard facially and as applied, results in an unconstitutional policy where even demonstrating proper cause is inadequate to satisfy local officials; and as a result infringes upon the core right of the Second Amendment.

**FIRST CAUSE OF ACTION**
**42 U.S.C. § 1983**
**Declaratory Judgment**
**As Against All Defendants**

86.     Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

87.     The Second Amendment, which applies against the CITY and the NYCPD License Division by operation of the Fourteenth Amendment, secures Plaintiff's individual and fundamental right to possess, own and carry a firearm for the purposes of public and private defense, and the defense of hearth and home.

88.     The safe, responsible and meaningful exercise of the Second Amendment right by an individual requires an unrestricted ability to carry a firearm outside the home.

89.     The "proper cause" standard of Penal Law §400.00(2)(f), both facially and as applied to these facts, impermissibly restricts a New York City resident's exercise of the Second Amendment right by completely prohibiting that resident from carrying a firearm outside his home without a showing that the resident has "a special need distinguishable from the general community" and by applying an irrational, corrupt and easily manipulated standard for "special need".

90.     The "proper cause" standard and "special need" discretion is a remnant from a time where the Second Amendment was treated as a privilege, rather than a right.

91.     The "proper cause" and "special need" definitions lack narrow, objective, and

15

definite standards to guide the NYCPD License Division.

92.    The permit scheme involves the appraisal of facts, the exercise of judgment, and the formation of an opinion by the NYCPD License Division.

93.    The unbridled discretion created by the "proper cause" and "special need" standards, renders §400.00(2)(f) "standardless," allowing for the current situation wherein licensing officers have received bribes for decades in return for the issuance of licenses, and yet deny licenses to individuals whom actually demonstrate proper cause.

94.    Conceding that Plaintiff satisfies the "proper cause" standard of Penal Law §400.00(2)(f), but then foisting upon him a business license is not substantially related to achievement of an important governmental interest such as crime prevention or public safety.

95.    The "proper cause" and "special need" standards are so vague that the issuance of unrestricted pistol licenses to convicted felons did not raise an immediate red flag as to corruption.

96.    The "proper cause" and "special need" standards prevents the furtherance of the government interests of public safety and crime prevention, by issuing licenses to convicted felons and those who could afford bribes and denying licenses to retired, decorated law enforcement officers, while simultaneously corrupting the integrity of the NYCPD.

97.    Rather than "proper cause" and "special need" meeting an "imperfect fit" with the goals of public safety and crime prevention, the current standards actually threaten the pubic.

98.    Penal Law §400.00 impermissibly restricts a New York City resident's exercise of the Second Amendment right by failing to allow ample alternative channels for the exercise of the Second Amendment right to carry, free of the "proper cause" and "special need" standards.

99.    In the foregoing ways, and for the foregoing reasons, Penal Law §400.00 and the

"proper cause" and "special need" standard is overbroad, vague, unreasonably and unconstitutionally restrictive and improperly infringes upon the exercise of Plaintiff's Second Amendment right.

100.    By enacting and enforcing Penal Law §400.00 and the "proper cause" and "special need" standard in violation of Plaintiff's constitutional rights under the Second Amendment, the Defendants have caused Plaintiff irreparable harm.

101.    By enacting and enforcing Penal Law §400.00 and the "proper cause" and "special need" standard, the Defendants, acting under the color of the law, have deprived New York City residents, including Plaintiff, of their right to keep and bear arms, in violation of the Second and Fourteenth Amendments to the U.S. Constitution.

102.    Plaintiff is thereby damaged in violation of 42 U.S.C. §1983.

103.    Plaintiff is therefore entitled to declaratory and preliminary and permanent injunctive relief against the continued enforcement and maintenance of the Defendants' unconstitutional customs, policies and practices.

## SECOND CAUSE OF ACTION
### 42 U.S.C. § 1983
### Violation of Plaintiff's Constitutional Rights
### As Against All Defendants

104.    Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

105.    Defendants have infringed Plaintiff JOSEPH OQUENDO's constitutional right under the Second and Fourteenth Amendments of the United States Constitution, other Amendments and sections of the Constitution, laws and statues of the State of New York and the New York State Constitution.

106.    Ownership of firearms by individuals legally entitled to own, possess and carry

17

those firearms is a basic fundamental right protected by the Second Amendment and Fourteenth Amendment of the United States Constitution.

107.     Plaintiff is legally entitled to own, possess and carry handguns under Penal Law Section 400.00.

108.     Defendants have unlawfully denied the Plaintiff's pistol license application without due process to cure the alleged "good guy letter" issue by being unable to challenge the administrative investigation after retirement.

109.     Defendants have unlawfully denied the Plaintiff's pistol license application without due process in that Defendants have not applied the proper cause or  special need standard in violation of §400.00 of the Penal Law and the Constitution.

110.     Alternatively, Defendants have unlawfully denied the Plaintiff's pistol license application without due process in that the proper cause standard infringes upon the core protections of the Second Amendment.

111.     As a result, Defendants have and are interfering and have infringed upon Plaintiff JOSEPH OQUENDO's ability to exercise his rights under the constitution.

112.     By reason of the foregoing, Plaintiff seeks a declaratory judgment, temporary restraining order, preliminary and permanent injunctive relief and monetary damages in an amount to be set at trial but not less than five million dollars ($5,000,000.00).

### THIRD CAUSE OF ACTION
### 42 U.S.C. § 1983 – *Monell* Claim
### As Against All Defendants

113.     Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

114.     The Defendants have created, implemented, continued, maintained and enforced a

Policy which deters, prevents, and denies New York City residents from exercising their right to own, possess and carry all types of legally possessed firearms.

115.     This Policy is implemented by the CITY through its administrative agencies such as the Defendant NYCPD, and the Defendant New York City Police Department Commissioner RAYMOND KELLY, in his individual and official capacity and the Defendant New York City Police Department Commissioner WILLIAM BRATTON, in his individual and official capacity, New York City Police Department Commissioner JAMES P. O'NEILL, in his individual and official capacity, the Director JONATHAN DAVID, THOMAS SCOLLAN, John Doe #1 - 3", individually and in his official capacity, through "Jane Doe# 1-3" , individually and in her official capacity as employees of the Defendant NYCPD and the CITY.

116.     This Policy as implemented is unconstitutional.  The Second Amendment as a privilege rather than a right, increases corruption and crime, denies licenses regardless of a showing of "proper cause" based upon self-defense and places burdens upon licensees who otherwise demonstrate proper cause without due process or legal justification.

117.     This Policy and its continued implementation by the Defendants have caused the Plaintiff both economic harm and emotional distress and has placed similarly situated individuals in jeopardy of having their rights infringed.

118.     This Policy, and its continued implementation by the Defendants, has deprived the Plaintiff of his constitutional rights.

119.     The Policy rather than protecting the public, has created an atmosphere which resulted in corruption.

120.     By reason of the foregoing, Plaintiff seeks a declaratory judgment, permanent injunctive relief and monetary damages for violations under *Monell* of not less than five million

dollars ($5,000,000.00).

## FOURTH CAUSE OF ACTION

### 42 U.S.C. § 1988 – Legal fees
### As Against All Defendants

121.    Plaintiff repeats and realleges the allegations set forth above as if fully set forth

herein.

122.    By reason of the foregoing, Plaintiff JOSEPH OQUENDO is entitled to damages

from all Defendants pursuant to U.S.C. § 1988(b) in an amount this Court deems just and proper.

## JURY TRIAL DEMANDED

123.    Plaintiff hereby demands jury trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment as follows:

First Cause of Action: An order declaring the present policy of the NYCPD to arbitrarily

and unpredictably apply restrictive categories once a proper cause determination has been made

to be unconstitutional; and recognize the Second Amendment right to be an individual right and

not a privilege; and creating a mechanism which satisfies Due Process for Police retirees to

challenge investigations left open upon retirement; and

Second Cause of Action: Awarding Plaintiff in excess of $5,000,000.00 in damages;

declaratory judgment, temporary, preliminary and permanent injunctive relief and monetary

damages for violation of his Second and Fourteenth Amendment rights;

Third Cause of Action: Awarding Plaintiff in excess of $5,000,000.00 in damages;

declaratory judgment, temporary, preliminary and permanent injunctive relief and monetary

damages for violations under *Monell*, and the Appointment of a Special Monitor to oversee

compliance with the Court's Order(s) pursuant to Federal Rule of Civil Procedure 53; and

implementing educational requirements and training of the Defendants to create a uniform and Constitutional standard of "special need" based upon self-defense which does not factor in wealth or celebrity, and regarding Penal Law §400.00, the Second and Fourteenth Amendments;

Fourth Cause of Action: Awarding Plaintiff's attorneys' fees, costs and disbursements of bringing this action pursuant to 42 U.S.C. §1988(b) in an amount this Court deems just and proper; and

For such other legal and/or equitable relief as this Court deems just and proper.

Dated: Garden City, New York
November 8, 2019

La REDDOLA, LESTER& ASSOCIATES, LLP


By   /Robert J. La Reddola/
Robert J. La Reddola, Esq.,
Attorneys for Plaintiff
600 Old Country Road, Suite 230
Garden City, New York 11530
(516) 745-1951